1   WO                                                                      SC

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Dexter Delbert Loring,                    No.   CV 19-05133-PHX-JAT (JFM)

10                       Plaintiff,

11  v.                                         **ORDER**

12  William Daly, et al.,

13                       Defendants.

14

15          Plaintiff Dexter Delbert Loring, who was then-confined in the Salt River Pima

16  Maricopa Indian Community Department of Corrections in Scottsdale, Arizona, filed a pro

17  se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and a "Motion Seeking

18  Leave to Proceed With a Civil Action in Federal Court in Forma Pauperis" ("Motion")

19  (Doc. 2).  In an October 29, 2019 Order, the Court denied the Motion and gave Plaintiff 30

20  days to pay the filing and administrative fees or file a complete prisoner Application to

21  Proceed In Forma Pauperis using the court-approved form (Doc. 6).  On November 13,

22  2019, a copy of the Order sent to Plaintiff at his address of record was returned as "no

23  longer in custody" (Doc. 7).  In response to a December 11, 2019 letter from Plaintiff,

24  which indicated that he was soon to be released, the Court granted Plaintiff 30 days to file

25  a new Application for Leave to Proceed In Forma Pauperis if he was not released, or a non-

26  prisoner Application to Proceed, if he was released (Doc. 10).  Plaintiff filed a non-

27  prisoner Application to Proceed (Doc. 11), which the Court granted (Doc. 15).

28          On January 3, 2020, the Clerk of Court sent a change of address form (Doc. 13) to

Plaintiff to the address reflected in Plaintiff's January 2, 2020 notice (Doc. 12).  On January 31, 2020, the form was returned to the Court as undeliverable (Doc. 14).  In an Order filed on March 23, 2020, the Court granted Plaintiff 30 days to file a notice of change of address or show why this case should not be dismissed for failure to prosecute (Doc. 15).  Plaintiff filed a notice of change of address (Doc. 16) reflecting that he is again in the custody of the Salt River Department of Corrections.  The Court will order Defendants Daly and Lee to answer Counts II and VIII of the Complaint and will dismiss the remaining claims and Defendants without prejudice.

## I.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.   Complaint

In his eight-count Complaint, Plaintiff alleges claims for retaliation, violation of mail rights, violation of his right to privacy, denial of due process in disciplinary proceedings, denial of access to the court, harassment, violation of his religious exercise rights, and denial of constitutionally adequate medical care. Plaintiff sues the following Salt River Department of Corrections (SRDOC) staff: Director William Daly; Lieutenants Dean Lee and Stacie Mitchell; Sergeants Wendy Hillman and Campbell; Officer Vaught; Nurse Practitioner Malkia; and Practical Nurse Rose. Plaintiff seeks injunctive, compensatory, and punitive relief.

## III.   Failure to State a Claim under 42 U.S.C. § 1983

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A.   Count I

Plaintiff designates Count I as a claim for retaliation. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took

TERMPSREF

- 3 -

some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest").  The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff alleges the following in Count I:

While incarcerated, Plaintiff saw a "lot of civil rights being violated" by SRDOC personnel.  Plaintiff submitted grievances and was subsequently confronted by Director Daly and Lieutenant Mitchell.  Daly demanded that Plaintiff stop "grieving issues that violate [his] civil rights as an inmate."  (Doc. 1 at 8.)  Plaintiff continued to submit grievances.  Daly placed Plaintiff on 16-hour lock-downs and, according to Plaintiff, allowed staff to mishandle Plaintiff's incoming and outgoing mail, engage in illegal searches and seizures, tamper with his mail, and interrupt confidential counseling sessions, block privileges.  Daly also told staff not to assist Plaintiff in any legal situations, ignored health situations due to medical staff's failures to inform Plaintiff of medication side-effects, housed Plaintiff with inmates with mental deficiencies so that Daly could claim that Plaintiff could not interact with others, and denied Plaintiff his religious exercise rights.  As his injury, Plaintiff alleges that he was "set back" by abnormal vertigo, mild shock, assimilation, increased post-traumatic stress disorder (PTSD) symptoms, and mental anguish.  Plaintiff alleges that he is dealing with intense counseling due to trauma caused by stress.

Plaintiff fails to allege facts to support that any of the alleged adverse acts by Daly

TERMPSREF

- 4 -

or Mitchell were in retaliation for Plaintiff filing grievances or otherwise exercising constitutionally protected rights. Plaintiff largely fails to allege any supporting circumstances, including when the acts occurred and facts to support that Daly or Mitchell were in any way involved with the complained of adverse acts. Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id*. Accordingly, Plaintiff fails to state a claim in Count I and it will be dismissed.

### B.   Count II

Plaintiff designates Count II as a claim for violation of mail rights, specifically legal mail rights. Generally, a prisoner retains First Amendment rights not inconsistent with his status as a prisoner and with legitimate penological objectives of the corrections system. *See Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004). This includes the First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, prison officials may intercept and censor outgoing mail containing escape plans, proposed criminal activity, or encoded messages. *See Procunier v. Martinez* , 416 U.S. 396, 413 (1974); *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (jail had legitimate security interest in inspecting detainees' mail for contraband); *Martin v. Tyson*, 845 F.2d 1451, 1456-57 (7th Cir. 1988) (same); *Murray v. Edwards County Sheriff's Dep't*, 453 F. Supp. 2d 1280, 1294 (D. Kan. 2006). Prison officials may also withhold incoming mail pursuant to prison regulations that are reasonably related to legitimate penological concerns. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1048-49 (9th Cir. 2002). To state a claim, a prisoner must allege facts to support that his mail was withheld absent a legitimate penological purpose. *Dennison v. Ryan*, No. 12-15609, 522 Fed. App'x 414, 418 (9th Cir. Apr. 9, 2013) (citing *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008)).

TERMPSREF

Prisoners have a constitutional right to have their legal mail delivered to them uncensored and unread, *Lemon v. Dugger*, 931 F.2d 1465 (11th Cir. 1991); however, isolated instances of inadvertent opening of legal mail outside an inmate's presence, while not to be condoned, are not actionable as constitutional violations, *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (an isolated incident of opening prisoner's constitutionally protected legal mail, without any evidence of improper motive or resulting interference with the prisoner's right to counsel or to access to the courts, does not give rise to a constitutional violation); *see Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (pattern or practice of opening properly marked legal mail may violate the First Amendment).  Further, only mail from an inmate's attorney, or prospective attorney, constitutes "legal mail" that, when appropriately labeled, is entitled to greater protection than other mail.  *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (stating that legal mail must be specifically marked as originating from an attorney). Mail to or from a public agency, and not a particular attorney, does not constitute "legal mail" entitled to greater First Amendment protections.  *See Grigsby v. Horel*, No. 08-16163, 341 Fed. App'x 314, 314-15 (9th Cir. July 27, 2009).  In addition, mail from the courts is not legal mail and the "First Amendment does not prohibit opening such mail outside the recipient's presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

Plaintiff alleges the following facts in Count II:

On March 7, 2019, Lieutenant Lee came to Plaintiff's housing unit and tried to resolve a legal mail issue "due to stamps being provided." (Doc. 1 at 9.)  Lee told Plaintiff that he (Lee) needed to skim sensitive legal mail written by Plaintiff.  Plaintiff contends there was no basis to skim his outgoing legal mail.  Other staff told Plaintiff that Lee had e-mailed all staff not to assist with any legal mail until he reviewed such "material." (*Id.*)

On July 3, 2019, Lee came to Plaintiff's cell and confiscated all his property, including legal material and confidential behavioral health material.  Those materials were searched and read outside of Plaintiff's presence.  An intelligence staff member told

Plaintiff that he left the area because Lee and his staff were violating Plaintiff's rights by reading sensitive legal and behavioral materials, including "legal material to [] Judge Hosay." (*Id.*)  In addition, some of his materials containing information about medication Plaintiff was prescribed were wrongly taken for eight days.  As his injury, Plaintiff alleges he suffered traumatic breakdowns and required intensive counseling.

Plaintiff fails to allege facts to support that the materials at issue were legal mail, i.e., mail either to or from an attorney.  Accordingly, Plaintiff fails to state a claim in Count II and it will be dismissed.

### C.     Count III

Plaintiff designates Count III as a violation of the right to confidentiality in behavioral health sessions.  Plaintiff alleges the following facts:

In April 2019, Lieutenant Mitchell prohibited Plaintiff from obtaining a stamp for outgoing legal mail.  Plaintiff submitted a grievance.  Mitchell then "invade[d]" a behavioral counseling session with non-party Jennifer Macove. (Doc. 1 at 10.)  Mitchell announced that "This is an intervention" and "stressed the resolution about one stamp." (*Id.*)  Corporals Reagan and Randal "accommodated" Mitchell during the interruption. (*Id.*)  Reagan saw how uncomfortable Plaintiff was by Mitchell arguing about issues concerning Plaintiff's grievance and Reagan ushered Mitchell out of the room.  Although Mitchell had warned staff not to read Plaintiff's confidential behavioral health materials, Mitchell invaded a sensitive counseling session.  As his injury, Plaintiff alleges that he has been diagnosed with PTSD.  Due to retaliation and invasion of his privacy, Plaintiff now suffers intense fear and PTSD symptoms.

Although unclear, it appears that Plaintiff may be attempting to assert a violation of the Health Insurance Portability and Accountability Act (HIPAA) based upon Mitchell's disruption of a counseling session.  However, HIPAA does not provide a private cause of action.  *Webb v. Smart Document Solutions*, 499 F.3d 1078, 1080 (9th Cir. 2007).  Therefore, Plaintiff fails to state a claim under HIPAA.

Plaintiff may also be attempting to assert a denial of medical care.  Not every claim

by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference."  *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs."  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain."  *Estelle*, 429 U.S. at 105.

TERMPSREF

Plaintiff fails to allege facts to support that Mitchell acted with deliberate indifference to Plaintiff's serious medical need.  Rather, Plaintiff alleges a one-time interruption of a counseling session.  That, absent more, is insufficient to state a claim.  For the reasons discussed, Count III will be dismissed for failure to state a claim.

### D.    Count IV

Plaintiff designates Count IV as a claim for violation of due process in disciplinary proceedings.  Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).  Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and [does] not otherwise violat[]e . . . the Constitution, the Due Process Clause does not in itself subject an inmate' s treatment by prison authorities to judicial oversight."  *Montanye v.  Haymes*, 427 U.S. 236, 242 (1976.  But a prisoner may challenge a disciplinary action that deprives or restrains a state-created liberty interest in some "unexpected manner."  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 483-84)).  However, a claim that prison officials "added things" to an appeal to mask procedural errors, for example, is not significant and atypical, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure.  *Id.* (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).

In analyzing whether a hardship is atypical and significant, three guideposts to consider are: (1) the conditions of confinement; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence.  *Ramirez*, 334 F.3d at 861; *Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).  "Atypicality" requires not merely an empirical comparison but turns on the importance of the right taken away from the prisoner.  *See Carlo v. City of Chino*, 105 F.3d

TERMPSREF

493, 499 (9th Cir. 1997); *see, e.g., Sandin*, 515 U.S. at 472 (30 days disciplinary segregation is not atypical and significant); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (4 months in administrative segregation is not atypical and significant); *Griffin v. Vaughn*, 112 F.3d 703, 706-708 (3d Cir. 1997) (15 months administrative segregation is not atypical and significant); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (6 months of confinement in especially disgusting conditions that were " more burdensome than those imposed on the general prison population were not atypical . . . in relation to the ordinary incidents of prison life."); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (2 years in administrative segregation is not atypical and significant); *Jacks v. Crabtree*, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship).  Thus, to determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'"  *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486).

If a court determines that a protected liberty interest is implicated, a plaintiff must also specify the due process safeguard he was denied and by whom.  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff*, 418 U.S. at 556.  Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so.  *Id.* at 565-66.  In addition, due process requires that there be "some evidence" to support the  official's decision.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  However, this "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.

Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion." *Hill*, 472 U.S. at 455-56 (emphasis added).

Plaintiff alleges the following:

On May 22, 2019, Plaintiff was suffering the effects of withdrawal from PTSD medication, which had been prescribed by SRDOC medical staff. While in withdrawal, Plaintiff suffered severe fear, paranoia, aggression, and confusion and unknowingly acted out. Plaintiff was held accountable for his acting out, which was the result of a sudden change in medication. Sergeant Hillman did not credit Plaintiff's explanation and stated that she was tired of Plaintiff using his PTSD as an excuse. Plaintiff explained that it was not his PTSD, but mainly the change in medications. Hillman stated that she would dismiss the disciplinary charge if Plaintiff obtained documentation in writing from non-party Dr. Duffy. Plaintiff obtained such documentation, but Hillman still sanctioned Plaintiff and did not investigate the effect of the medications on his conduct. As his injury, Plaintiff alleges severe emotional distress, increased anxiety, depression, suicidal ideation, and an increase in PTSD symptoms.

Plaintiff fails to allege facts to support that he was subject to an atypical and significant hardship in relation to the ordinary incidents of prison life. He does not state what sanctions he received or for what specific charge. Nor does Plaintiff allege how he was denied due process in connection with his disciplinary proceedings. Accordingly, Plaintiff fails to state a claim in Count IV and it will be dismissed.

**E.    Count V**

Plaintiff designates Count V as a claim for denial of the right to access the courts. The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to

TERMPSREF

sentences or conditions of confinement before the courts." *Id*. at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. *Id*. at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. *Id*. at 352-53. In addition to identifying "a nonfrivolous, arguable underlying claim," the underlying claim "must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id*. at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id*. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. (emphasis in original). Further, the denial of access to a paralegal or use of a law library is not actionable if there is no claim of prejudice to an existing or future legal action. *Id*. at 351-53.

Plaintiff alleges the following:

On August 2, 2019, Plaintiff asked Sergeant Campbell to assist him with a grievance about legal issues "that were in process of being filed in U.S. District Court." (Doc. 1 at 12.) Plaintiff "conveyed how [he]'d been neglected protocol and procedure w/channeling a grievance," and that he wanted a receipt stating that he had followed protocol and procedure. (*Id*.) Campbell responded that Daly had told him not to assist Plaintiff and that he (Campbell) would not "accommodate" Plaintiff in any grievance procedure. (*Id*.) Plaintiff asked Campbell whether his body camera was on and Campbell responded that it was. Plaintiff asked Campbell, as the commanding day shift sergeant, to clarify why he would not provide a resolution to "this issue." Campbell again stated that Daly had said

not to assist in any legal issue and Campbell did not want to "indict himself" in any way. As his injury, Plaintiff alleges mental and emotional anguish.

Although unclear, Plaintiff appears to assert that Campbell refused to certify whether Plaintiff had properly complied with grievance procedures.  Plaintiff's allegations do not support a conclusion that Campbell actively interfered with Plaintiff's attempts to file documents in court or that Plaintiff suffered an actual injury with respect to any court proceeding.

Moreover, although prisoners have a First Amendment right to file prison grievances, *Rhodes*, 408 F.3d at 567, "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann*, 855 F.2d at 640, and the failure to follow grievance procedures does not give rise to a due process claim.  *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D. Ill. 1995) (jail grievance procedures did not create a substantive right enforceable under § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (violations of grievance system procedures do not deprive inmates of constitutional rights). "[N]o constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).  In addition, "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials.  Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the courts).

The mere refusal to certify that Plaintiff had properly complied with any SRDOC grievance process does not rise to the level of a constitutional violation or deny access to the court.[1]  Count V will be dismissed for failure to state a claim.

---

[1]  A prisoner's alleged failure to exhaust administrative remedies is an affirmative defense that a defendant must raise to avoid waiver of such defense.  *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).  If raised,

TERMPSREF

**F.     Count VI**

Plaintiff designates Count VI as a claim for harassment.  Plaintiff alleges the following facts:

The morning of May 27, 2019, Defendant Vaught "harassed" Plaintiff by asking Plaintiff why Plaintiff was irate with him and claimed that Plaintiff did not like him.  Plaintiff responded that he was not feeling well because of the medication he had been given.  Vaught did not ask Plaintiff if he needed medical assistance but continued to make "harassing" comments to Plaintiff and asking Plaintiff why he did not like him.  Vaught's questions made Plaintiff uncomfortable and he asked Vaught to leave him alone.  An inmate in an adjacent cell also told Vaught that Plaintiff was acting out-of-character because of the medication he had been given.  Vaught continued to insist that Plaintiff did not like him.  Plaintiff retreated to his cell with a chair to do GED homework.  Vaught told Plaintiff that he could not take the chair into his cell.  Plaintiff responded that he was only using the chair in his cell while he finished his homework and would take it out when he was finished.  Plaintiff also told Vaught that he would leave his cell door open so that he (Plaintiff) was visible.  Vaught insisted that Plaintiff remove the chair from his cell immediately.  Aggravated, Plaintiff threw the chair into the day room.  Plaintiff felt threatened and intimidated by Vaught.  Prior to this incident, Vaught had stopped non-party Detective Garrison in the SRDOC parking lot and asked him why Plaintiff did not like him (Vaught).  Other officers also informed Plaintiff of similar comments, which Plaintiff took as personal harassment.  As his injury, Plaintiff alleges mental and emotional anguish.

Plaintiff complains of verbal harassment.  However, verbal harassment, absent more, does not amount to a constitutional violation.  *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983") (quoting *Collins v. Cundy*, 603 F.2d

the defendant bears the initial burden to show that there was an *available* administrative remedy and that the prisoner did not exhaust it.  *Albino*, 747 F.3d at 1166, 8; *see Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (a defendant must demonstrate that applicable relief remained available in the grievance process).

825 (10th Cir. 1979)).  Accordingly, Plaintiff fails to state a claim on this basis and Count VI will be dismissed.

### G.    Count VII

Plaintiff designates Count VII as a claim for denial of constitutionally adequate medical care, the standard for which is described above.  Plaintiff alleges the following facts:

Beginning January 3, 2019, Plaintiff was prescribed Effexor and Prozac for PTSD. Plaintiff was "doing fine" until mid-February and mid-April.  In mid-February and mid-April, Plaintiff combined Effexor with other medications, and at one point, Plaintiff stopped taking Effexor due to side-effects.  In April, the effect of Plaintiff taking Effexor and Prozac in combination with Compazine[2] and Topamax[3] caused "bad" results.  Plaintiff was not provided information regarding possible side-effects of the medications. Specifically, he was not informed not to abruptly stop taking Effexor and he was not informed that taking Effexor in combination with other medications could cause "negative cognitive issues."  Plaintiff informed Nurse Rose that the medication was causing him to feel "out of character."  Rose told Plaintiff that he should continue taking the medications and she doubled the dosages.

After a week of taking the medications, Plaintiff suffered numerous side-effects. Plaintiff informed duty officers, who told Plaintiff to put it on an inmate request form. Plaintiff submitted an inmate request but received no response from medical staff.  Plaintiff stopped taking the medications.  After stopping, Plaintiff had the interaction with Defendant Vaught, alleged in Count VI.  Apparently after that, psychiatrist Duffy told Plaintiff that unpredictable side-effects could result from abruptly discontinuing Effexor. Duffy also told Plaintiff that he (Duffy) had stopped prescribing Compazine ten years

---

[2] Compazine is used to treat severe nausea and vomiting and to treat the symptoms of schizophrenia, and on a short-term basis, anxiety.  *See* https://medlineplus.gov/druginfo/meds/a682116.html (last accessed May 28, 2020).

[3] Topamax is used to treat certain types of seizures and to prevent migraine headaches.  *See* https://medlineplus.gov/druginfo/meds/a697012.html (last accessed May 28, 2020).

previously because of its side-effects and that Topamax made patients feel like crawling out of their skins. Plaintiff does not allege whether Nurse Practitioner Malkia nor Nurse Rose told Duffy that Plaintiff had been prescribed either medication. As his injury, Plaintiff alleges mental and physical anguish.

Plaintiff apparently contends that prescribing him Effexor, Compazine, and Topamax without warning him of their side-effects, and not to abruptly stop taking the medications violated his constitutional rights. Plaintiff has not alleged facts to support that anyone acted with deliberate indifference to his serious medical needs by prescribing the medications or by failing to warn him of their side-effects or adverse consequences of abruptly discontinuing the medications. At most, Plaintiff alleges a disagreement between doctors in prescribing the medications and negligence in allegedly failing to warn Plaintiff of potential side-effects from taking them or abruptly discontinuing them. Because Plaintiff fails to allege facts to support that anyone acted with deliberate indifference, Plaintiff fails to state a claim in Count VII.

### H.     Count VIII

Plaintiff designates Count VIII as a claim for violation of religious exercise rights. The Religious Land Use and Incarcerated Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5, prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). Therefore, to state a claim under RLUIPA, a plaintiff must allege facts to support that government action has substantially burdened the exercise of the plaintiff's religion without a compelling government interest and by the least restrictive means. *See Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002). "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quotations omitted). Thus, an institutionalized person's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] because of conduct mandated by

religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'" *Id.*

In addition, "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). However, free exercise rights are "necessarily limited by the fact of incarceration[] and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *Id.* To state a First Amendment free exercise claim, a plaintiff must allege that a defendant substantially burdened his religious practice without a justification reasonably related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *Warsoldier*, 418 F.3d at 995 (citing *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (pressure on exercise must be substantial)); *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (same). The religious practice or exercise at issue must be rooted in sincerely held religious belief and not in "'purely secular' philosophical concerns." *Malik*, 16 F.3d at 333 (internal citation omitted).

Plaintiff alleges the following facts:

Since October 2018, Plaintiff has asked why he has not been able to go to the ceremonial sweat lodge. Plaintiff saw other inmates go to the sweat lodge, but administratively segregated inmates who are segregated for non-disciplinary reasons, apparently including Plaintiff, could not. As of May 2019, Defendants Daly and Lee had not attempted to accommodate all prisoners' right to practice their religion, as provided in the Indian Tribal Rights Act and civil rights law. Daly's failure to attempt to accommodate such exercise has been an ongoing issue. Unidentified staff have told Plaintiff that they have suggested that at least once a month all prisoners be accommodated, but Daly responded that it was not a priority. Plaintiff has also requested "Mormon services" since his family is Mormon. Daly and Lee have responded that only Christian and Native American services are accommodated at SRDOC. Plaintiff is not a Christian and he is not

TERMPSREF

being allowed to attend ceremonial sweat lodge services.  As his injury, Plaintiff alleges emotional and mental anguish.

Plaintiff sufficiently alleges that Daly and Lee have denied him the ability to participate in the sweat lodge.  These Defendants will be required to respond to Count VIII.

**V.    Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff states a claim for violation of his religious exercise rights in Count VIII against Defendants Daly and Lee.  Defendants Daly and Lee will be required to respond to Count VIII in their official capacities to the extent that Plaintiff seeks injunctive relief as in their individual capacities to the extent that Plaintiff seeks damages against them for violation of his First Amendment religious exercise rights.

**VI.   Warnings**

**A.    Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.    Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

TERMPSREF

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Counts I -VII are **dismissed** without prejudice.

(2)     Defendants Mitchell, Hillman, Campbell, Vaught, Malkia, and Rose are **dismissed** without prejudice.

(3)     Defendants Daly and Lee must answer Count VIII.

(4)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Daly and Lee.

(5)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(8)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(9)     A Defendant who agrees to waive service of the Summons and Complaint

**TERMPSREF**

must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10)   The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)   Defendants Daly and Lee must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

///

///

TERMPSREF

(13)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 8th day of June, 2020.

James A. Teilborg
Senior United States District Judge

TERMPSREF